1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

9

| | |
|---|---|
| 10  STEVEN GALAVIZ, | Case No. CV 15-5546-JVS (KK) |
| 11                    Petitioner, | |
| 12  v. | FINAL REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |
| 13  DAVE DAVIES, Warden, | |
| 14                    Respondent. | |
| 15 | |

16

17      This Final Report and Recommendation is submitted to the Honorable

18  James V. Selna, United States District Judge, pursuant to Title 28 of the United

19  States Code, section 636 and General Order 05-07 of the United States District

20  Court for the Central District of California.

21                                    **I.**

22                    **SUMMARY OF RECOMMENDATION**

23      Steven Galaviz ("Petitioner"), a California state prisoner proceeding pro se,

24  has filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to Title 28 of

25  the United States Code, section 2254(d), challenging his 2012 conviction in Los

26  Angeles County Superior Court.  On habeas review, Petitioner sets forth a single

27  claim of instructional error.  Because Petitioner's claim fails on its merits, the

28  Court recommends the Petition be denied.

## II.

## CLAIM FOR RELIEF

Petitioner's claim, as presented in his Petition, is as follows: An erroneous jury instruction allowed the jury to convict Petitioner of first degree murder even if some jurors believed Petitioner was guilty only of second degree murder, thereby allowing for conviction on a legally inadequate theory of guilt and lowering the prosecutor's burden of proof.  Pet. at 17-29.[1]

## III.

## PROCEDURAL HISTORY

On October 5, 2012, following a jury trial in Los Angeles County Superior Court, Petitioner was convicted of one count of first degree murder with gang and gun use enhancements.  Lodgment No. ("lodg.") 8 at 275; Lodg. 20 at 6725-26.[2] On December 19, 2012, the trial court sentenced Petitioner to sixty years to life in state prison.  CT 275-280.

On August 19, 2013, Petitioner appealed the judgment to the California Court of Appeal.  Lodg. 1.  On September 4, 2014, the California Court of Appeal affirmed Petitioner's conviction on direct appeal in a reasoned decision.  Lodg. 4.

On October 9, 2014, Petitioner filed a Petition for Review in the California Supreme Court.  Lodg. 5.  On November 14, 2014, the California Supreme Court summarily denied review of the appeal.  Lodg. 6.

---

[1] The Court refers to the pages of the Petition as if they were consecutively paginated.

[2] The Court's citations to Lodgments refer to the documents lodged by Respondent in support of the Answer.  ECF Docket No. ("dkt.") 24.  Lodgment No. 8 is a copy of the Clerk's Transcript ("CT") from Petitioner's trial court proceedings.  Lodgment Nos. 9-20 contain copies of the twelve volumes of Reporter's Transcript ("RT") of Petitioner's trial court proceedings.  Respondent separately lodged page 718 of volume 3 of the Reporter's Transcript, which had been erroneously omitted from the lodgments in support of the Answer.  Dkt. 26.

2

On July 15, 2015, Petitioner constructively[3] filed the instant Petition. Dkt. 1 at 8. On March 18, 2016, Respondent filed an Answer, contending Petitioner's claims are meritless. Dkts. 23-24. On April 16, 2016, Petitioner filed a Traverse. Dkt. 27. The matter thus stands submitted and ready for decision.

## IV.

## **RELEVANT FACTS**

For a summary of the facts, this Court relies on the California Court of Appeal's reasoned decision on Petitioner's direct appeal:[4]

> *Prosecution Evidence*
>
> On August 14, 2010, around 2:00 a.m., a group of approximately eight friends that included Charlotte Rodas and the victim, Rene Guardado, was gathered outside on 66th Street near Crenshaw Boulevard, talking, smoking marijuana, and drinking. They were standing near a wall in an area that was claimed by a gang known as "Florence."
>
> While they were standing near the wall, a car traveled very slowly toward them and stopped where they stood. Someone in the car yelled "Fuck Florence."
>
> The area at the wall was well-lit. Rodas focused on appellant, who was sitting in the front passenger seat of the car. She recognized appellant from a previous encounter.

---

[3] Under the "mailbox rule," when a <u>pro se</u> prisoner gives prison authorities a pleading to mail to court, the court deems the pleading constructively "filed" on the date it is signed. <u>Roberts v. Marshall</u>, 627 F.3d 768, 770 n.1 (9th Cir. 2010) (citation omitted). This Court presumes Petitioner gave his Petition to prison authorities on the date it was signed.

[4] Because this factual summary is drawn from the California Court of Appeal's opinion, "it is afforded a presumption of correctness that may be rebutted only by clear and convincing evidence." <u>Moses v. Payne</u>, 555 F.3d 742, 746 n.1 (9th Cir. 2008) (citations omitted). To the extent Petitioner challenges the accuracy of this summary, the Court has independently reviewed the trial record and finds the summary accurate. Petitioner is referred to as "appellant."

1       Rodas was standing approximately nine feet away from the car

2   and had an unobstructed view of appellant.  She looked at him for

3   what felt like "the longest time," but was approximately 10 seconds.

4   She saw his facial expression change from serious to "kind of

5   smiling," or a "smirk."  Rodas felt that something bad was about to

6   happen.  Her friend, Maritza Gutierrez, saw appellant point a gun out

7   the car window, and then Gutierrez heard gunshots.

8       Rodas pulled two of her friends down to the ground and heard

9   gunshots coming from the car.  Guardado was shot and killed.  The car

10  drove away.

11      Rodas identified appellant as the shooter in a photographic

12  lineup and at trial.  Gutierrez identified appellant in a photographic

13  lineup as looking similar to the shooter and identified him at trial.

14      The prosecution presented extensive gang evidence at trial.

15  *Defense Evidence*

16      Three of appellant's family members testified that appellant

17  was at home with them having a barbecue on the evening of August 13,

18  2010, the night of the shooting.  They testified that appellant was at

19  home, eating, watching movies, and playing video games with them

20  throughout the evening, until midnight.

21      Appellant presented evidence that Gutierrez and Rodas

22  appeared to be under the influence of alcohol when they were

23  interviewed by the police.  Appellant also presented expert witness

24  evidence about the uncertainties of eyewitness identification and the

25  effects of alcohol intoxication upon eyewitness memory.

26  *Rebuttal Evidence*

27

28

4

1          On August 23, 2010, at 9:36 p.m., appellant received a text on

2          his cell phone from one of the family members who testified.  The

3          message stated, "Where u att [*sic* ]."

4  Lodg. 4 at 2-4 (footnote omitted).

5                       **V.**

6             **STANDARD OF REVIEW**

7          Under the Antiterrorism and Effective Death Penalty Act of 1996

8  ("AEDPA"), a federal court may not grant habeas relief on a claim adjudicated on

9  its merits in state court unless the adjudication:

10          (1) resulted in a decision that was contrary to, or involved an

11          unreasonable application of, clearly established Federal law, as

12          determined by the Supreme Court of the United States; or

13          (2) resulted in a decision that was based on an unreasonable

14          determination of the facts in light of the evidence presented in the

15          State court proceeding.

16  28 U.S.C. § 2254(d).

17          "'[C]learly established Federal law' for purposes of § 2254(d)(1) includes

18  only 'the holdings, as opposed to the dicta, of th[e] [United States Supreme]

19  Court's decisions'" in existence at the time of the state court adjudication.  White

20  v. Woodall, ____ U.S. ____, 134 S. Ct. 1697, 1702, 1706, 188 L. Ed. 2d 698 (2014).

21  However, "circuit court precedent may be 'persuasive' in demonstrating what law

22  is 'clearly established' and whether a state court applied that law unreasonably."

23  Maxwell v. Roe, 628 F.3d 486, 494 (9th Cir. 2010) (citation omitted).

24          Overall, AEDPA presents "a formidable barrier to federal habeas relief for

25  prisoners whose claims have been adjudicated in state court." Burt v. Titlow, ____

26  U.S. ____, 134 S. Ct. 10, 16, 187 L. Ed. 2d 348 (2013).  The federal statute presents

27  "a difficult to meet . . . and highly deferential standard for evaluating state-court

28  rulings, which demands that state-court decisions be given the benefit of the

doubt." <u>Cullen v. Pinholster</u>, 563 U.S. 170, 131 S. Ct. 1388, 1398, 179 L. Ed. 2d 557 (2011) (internal citation and quotation marks omitted).  On habeas review, AEDPA places the burden on petitioners to show the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Harrington v. Richter</u>, 562 U.S. 86, 103, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).  Put another way, a state court determination that a claim lacks merit "precludes federal habeas relief so long as fairminded jurists could disagree" on the correctness of that ruling. <u>Id.</u> at 101.  Federal habeas corpus review therefore serves as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." <u>Id.</u> at 102-03 (internal citation and quotation marks omitted).

Where the last state court disposition of a claim is a summary denial, this Court must review the last *reasoned* state court decision addressing the merits of the claim under AEDPA's deferential standard of review.  <u>Maxwell</u>, 628 F.3d at 495. <u>See also</u> <u>Berghuis v. Thompkins</u>, 560 U.S. 370, 380, 130 S. Ct. 2250, 176 L. Ed. 2d 1098 (2010); <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803-04, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991).

Here, the California Court of Appeal's opinion on Petitioner's direct appeal, <u>see</u> lodg. 4, stands as the last reasoned decision with respect to Petitioner's claim and will be reviewed under AEDPA's deferential standard of review for claims "adjudicated on the merits."  28 U.S.C. § 2254(d); <u>Richter</u>, 562 U.S. at 99.

## VI.

### DISCUSSION

Petitioner argues the trial court instructed the jury with an inappropriate portion of CALCRIM No. 521 that gave the jury the impression it could convict Petitioner of first degree murder even if some jurors believed Petitioner was guilty only of second degree murder.  Pet. at 17-29.  Petitioner argues the erroneous

portion of CALCRIM No. 521 allowed the jury to convict Petitioner on an invalid legal theory and lowered the prosecutor's burden of proof. Id. at 17-29.

**A.     Background**

The trial court instructed the jury on murder pursuant to modified versions of CALCRIM Nos. 500, 520, and 521, including the portion challenged by Petitioner which is italicized below:

> Homicide is the killing of one human being by another.  Murder is a type of homicide.  The defendant is charged with murder.

> The defendant is charged in Count 1 with murder, in violation of Penal Code section 187.

> To prove that the defendant is guilty of this crime, the People must prove that:

> 1.  The defendant committed an act that caused the death of another person; and

> 2.  When the defendant acted, he had a state of mind called malice aforethought.

> There are two kinds of malice aforethought, express malice and implied malice.  Proof of either is sufficient to establish the state of mind required for murder.  The defendant acted with express malice if he unlawfully intended to kill.

> The defendant acted with implied malice if he:

> 1.  Intentionally committed an act;

> 2.  The natural and probable consequences of the act were dangerous to human life;

> 3.  At the time he acted, he knew his act was dangerous to human life; and

> 4.  He deliberately acted with conscious disregard for human life.

Malice aforethought does not require hatred or ill will toward the victim.  It is a mental state that must be formed before the act that causes death is committed.  It does not require deliberation or the passage of any particular period of time.

If you decide the defendant committed murder, you must then decide whether it was murder of the first or second degree.

*You may not find the defendant guilty of first degree murder unless all of you agree that the People have proved that the defendant committed murder.  But all of you do not need to agree on the same theory.*

The defendant is guilty of first degree murder if the People have proved that he acted willfully, deliberately, and with premeditation. The defendant acted willfully if he intended to kill.  The defendant acted deliberately if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill. The defendant acted with premeditation if he decided to kill before completing the act that caused death.

The length of time the person[] spends considering whether to kill does not alone determine whether the killing is deliberate and premeditated.  The amount of time required for deliberation and premeditation may vary from person to person and according to the circumstances.  A decision to kill made rationally, impulsively, and without careful consideration is not deliberate and premeditated.  On the other hand, a cold, calculated decision to kill can be reached quickly.  The test is the extent of the reflection, not the length of time.

The requirement for second degree murder based on express or implied malice are explained in CALCRIM 520 with malice -- or first or second degree murder with malice aforethought.

8

1     The People have the burden of proving beyond a reasonable
2     doubt that the killing was first degree murder rather than a lesser
3     crime.  If the People have not met this burden, you must find the
4     defendant not guilty of first degree murder.

5     The People have the burden of proving beyond a reasonable
6     doubt that the killing was first degree murder rather than a lesser
7     crime.  If the People have not met this burden, you must find the
8     defendant not guilty of first degree murder.

9  12 RT at 6620-24; CT at 101-103.

10      Despite the instructions' reference to second degree murder, the prosecutor

11  suggested during closing arguments that there was no dispute between the parties

12  that the shooting amounted to first degree murder.  12 RT at 6631-33.  The

13  prosecutor never presented an argument that the shooting was merely second

14  degree murder and the defense did not debate the degree of the murder alleged.

15  Rather, the defense appeared to concede the crime committed was first degree

16  murder; arguing instead that Petitioner was never at the scene of the crime and had

17  been misidentified as the shooter.  12 RT at 6657-80.  To the extent the defense

18  addressed the substantive elements of the charges at all it was only to challenge the

19  evidence supporting the gang allegation.  12 RT at 6680-97.

20  **B.     Applicable Law**

21      Claims of error in state jury instructions are generally a matter of state law

22  and do not usually invoke a constitutional question.  Gilmore v. Taylor, 508 U.S.

23  333, 342-43, 113 S. Ct. 2112, 124 L. Ed. 2d 306 (1993).  "Claims that merely

24  challenge the correctness of jury instructions under state law cannot reasonably be

25  construed to allege a deprivation of federal rights."  Van Pilon v. Reed, 799 F.2d

26  1332, 1342 (9th Cir. 1986); see also Menendez v. Terhune, 422 F.3d 1012, 1029

27  (9th Cir. 2005) ("Any error in the state court's determination of whether state law

28  allowed for an instruction . . . cannot form the basis for federal habeas relief.");

1   Dunckhurst v. Deeds, 859 F.2d 110, 114 (9th Cir. 1988) (an instructional error

2   "does not alone raise a ground cognizable in a federal habeas corpus proceeding").

3          A jury instruction violates due process only if "the ailing instruction by itself

4   so infected the entire trial that the resulting conviction violates due process."

5   Estelle v. McGuire, 502 U.S. 62, 72, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991)

6   (quoting Cupp v. Naughten, 414 U.S. 141, 147, 94 S. Ct. 396, 38 L. Ed. 2d 368

7   (1973)).  The instruction must be considered in the context of the trial record and

8   the instructions as a whole.  Henderson v. Kibbe, 431 U.S. 145, 154, 97 S. Ct. 1730,

9   52 L. Ed. 2d 203 (1977); see also Middleton v. McNeil, 541 U.S. 433, 437-38, 124 S.

10  Ct. 1830, 158 L. Ed. 2d 701 (2004).

11         "A conviction based on a general verdict is subject to challenge if the jury

12  was instructed on alternative theories of guilt and may have relied on an invalid

13  one."  Hedgpeth v. Pulido, 555 U.S. 57, 58, 129 S. Ct. 530, 172 L. Ed. 2d 388

14  (2008).  "[T]he proper rule to be applied is that which requires a verdict to be set

15  aside in cases where the verdict is supportable on one ground, but not on another,

16  and it is impossible to tell which ground the jury selected."  See Burks v. United

17  States, 437 U.S. 1, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978); Sandstrom v. Montana,

18  442 U.S. 510, 526, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979) ("It has long been settled

19  that when a case is submitted to the jury on alternative theories that the

20  unconstitutionality of any of the theories requires that the conviction be set

21  aside.").

22         In addition, "[i]n a criminal trial, the State must prove every element of the

23  offense, and a jury instruction violates due process if it fails to give effect to that

24  requirement."  Middleton, 541 U.S. at 437 (citing Sandstrom, 442 U.S. at 520-21).

25         However, errors in jury instructions involving "omissions or incorrect

26  descriptions of elements are considered trial errors" subject to a harmless error

27  analysis.  Neder v. United States, 527 U.S. 1, 8-11, 119 S. Ct. 1827, 144 L. Ed. 2d 35

28  (1999); see also Pulido, 555 U.S. at 60-61 (claim regarding instructions on

1   alternative theories of guilt subject to harmless error review); Byrd v. Lewis, 566

2   F.3d 855, 863-64 (9th Cir. 2009), cert. denied, 559 U.S. 1074, 130 S. Ct. 2103, 176

3   L. Ed. 2d 733 (2010) (claim that an instruction did not properly define each

4   element of the charged offense subject to harmless error review).

5          When a state court determines a constitutional error is harmless beyond a

6   reasonable doubt pursuant to Chapman v. California, 386 U.S. 18, 24, 87 S. Ct.

7   824, 17 L. Ed. 2d 705 (1967), a federal court on habeas review must determine

8   whether the error was harmless under both AEDPA, Title 28 of the United States

9   Code, section 2254(d), and Brecht v. Abrahamson, 507 U.S. 619, 637-38, 113 S. Ct.

10   1710, 123 L. Ed. 2d 353 (1993).  Davis v. Ayala, ___ U.S. ___, 135 S. Ct. 2187, 2198,

11   192 L. Ed. 2d 323, reh'g denied, ___ U.S. ___, 136 S. Ct. 14, 192 L. Ed. 2d 983

12   (2015) (holding while a federal court adjudicating a habeas petition does not need

13   to "'formal[ly]' apply both Brecht and 'AEDPA/Chapman,' AEDPA nevertheless

14   'sets forth a precondition to the grant of habeas relief'" (internal citations

15   omitted)); see also Jensen v. Clements, 800 F.3d 892, 902 (7th Cir. 2015), reh'g

16   denied (Oct. 9, 2015) (granting habeas relief post-Ayala and applying both AEDPA

17   and Brecht harmless error analyses).

18          Under AEDPA, habeas relief is available only if the state court's

19   determination the error was harmless beyond a reasonable doubt, was contrary to

20   or an unreasonable application of Chapman.  Ayala, 135 S. Ct. at 2198 (holding the

21   court "may not overturn the [state court's] decision unless that court applied

22   Chapman 'in an "objectively unreasonable" manner'").  In applying the Chapman

23   harmless error analysis on direct appeal, "where a reviewing court concludes

24   beyond a reasonable doubt that the omitted element was [1] uncontested and [2]

25   supported by overwhelming evidence, such that the jury verdict would have been

26   the same absent the error, the erroneous instruction is properly found to be

27   harmless."  Neder, 527 U.S. at 17.

28

When a Chapman decision is reviewed under AEDPA, "a federal court may not award habeas relief under § 2254 unless *the harmlessness determination itself* was unreasonable." Fry v. Pliler, 551 U.S. 112, 119, 127 S. Ct. 2321, 168 L. Ed. 2d 16 (2007) (emphasis in original). A state court's decision is not unreasonable if "'fairminded jurists could disagree' on [its] correctness." Richter, 562 U.S. at 101 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004)). Petitioner "therefore must show that the state court's decision to reject his claim 'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Ayala, 135 S. Ct. at 2199 (quoting Richter, 562 U.S. at 103).

"Under Brecht, an instructional error is prejudicial and habeas relief is appropriate only if, after reviewing the record as a whole, [the court] concludes that there was a substantial and injurious effect or influence on the verdict, or if [the court is] 'left in grave doubt' as to whether there was such an effect." Pulido v. Chrones, 629 F.3d 1007, 1012 (9th Cir. 2010). "When a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict,' that error is not harmless. And, the petitioner must win." O'Neal v. McAninch, 513 U.S. 432, 436, 115 S. Ct. 992, 130 L. Ed. 2d 947 (1995).

**C.     State Court Opinion**

The California Court of Appeal denied Petitioner's claim on direct appeal. Lodg. 4. The court found "the instructions were not erroneous and that it is not reasonably likely that the jury construed the instructions in a manner violative of appellant's rights." Id. at 5. The court further held "any alleged error was harmless beyond a reasonable doubt." Id. The court reasoned as follows:

> The evidence established that the car in which appellant rode traveled very slowly as it approached the victims and witnesses and

then stopped in front of the group.  Appellant had a gun, pointed it out
the car window, and directly shot at Guardado and his friends.  Before
appellant fired the gun, Rodas made eye contact with appellant for
approximately 10 seconds and saw his expression change from serious
to "kind of smiling."  The evidence clearly was sufficient to establish
that appellant acted willfully, deliberately, and with premeditation in
shooting at the victim and the witnesses.  Therefore it is not
reasonably probable that the jury would have reached a result more
favorable to appellant absent the alleged instructional error.

Id. at 10-11.

**D.   Analysis**

First, to the extent Petitioner's argument is purely one of state law error, his
claim is not cognizable on federal habeas review.  Estelle, 502 U.S. at 67-68.

Second, assuming *arguendo* there was instructional error, the state court's
finding that the error was harmless was not unreasonable.  Ayala, 135 S. Ct. at 2199.

The issue regarding the degree of murder was uncontested.  Neder, 527 U.S.
at 17.  At no time did the defense challenge the prosecutor's assertion that the
shooting amounted to first degree murder and nothing less.  12 RT at 6631-33.
Rather, the defense only presented arguments regarding mistaken identity and the
lack of proof of the gang enhancement.  12 RT at 6657-97.

In addition, overwhelming evidence supported a finding of first degree
murder under the prosecutor's theory of premeditation and deliberation.  Neder,
527 U.S. at 17.  The shooter's car slowly approached the victim's group and
stopped.  7 RT at 4248-49, 4253-54, 4272-73; 8 RT at 4599, 4807-08, 4875-78; 9
RT at 5143.  Someone inside the car yelled, "Fuck" and then, "Florence."  8 RT
at 4876, 4881-82; 9 RT at 4113.  The shooter, who was identified as Petitioner,
pointed a gun out the window of the car and shot at the group.  7 RT at 4251, 4269-
73, 4276, 8 RT at 4501-03, 4506, 4514, 4520, 4524, 4553, 4611-15, 4802-04, 4807,

13

1  4821, 4885; 9 RT at 5501, 5503-04, 5510.  Immediately after the shooting, the car

2  drove away.  9 RT at 5114.  The evidence thus established that Petitioner rode to

3  the scene armed with a gun, the driver of the car stopped in front of the victim's

4  group, and then Petitioner willfully shot at the group.  Having completed their

5  purpose, Petitioner's car drove away.  See People v. Sanchez, 26 Cal. 4th 834, 849,

6  29 P.3d 209, 219 (2001) ("Premeditation can be established in the context of a gang

7  shooting even though the time between the sighting of the victim and the actual

8  shooting is very brief.").

9        Moreover, the Court concludes the alleged error did not have a substantial

10  and injurious effect or influence on the verdict.  Brecht, 507 U.S. at 637-38.

11  Despite the jury instructions defining second degree murder, the jury was not

12  presented with any evidence or argument supporting this lesser crime.  Under

13  these circumstances, the jury could only convict Petitioner of first degree murder

14  after coming to a unanimous finding that the prosecutor had proved the crime of

15  first degree murder beyond a reasonable doubt.  The evidence, arguments of

16  counsel, and jury instructions supported the first degree murder verdict and

17  properly apprised the jury of the burden of proof.  Accordingly, the Court is not left

18  in "grave doubt" that the outcome would have been different absent the alleged

19  error.  Pulido, 629 F.3d at 1012.

20        Hence, the state court's denial of Petitioner's claim was not "contrary to"

21  or an "unreasonable application" of "clearly established federal law."  28 U.S.C. §

22  2254(d).  Accordingly, habeas relief is not warranted on Petitioner's claim.

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

## VII.

## __CONCLUSION__

IT IS THEREFORE RECOMMENDED that the District Court issue an order: (1) accepting the findings and recommendations in this Final Report; (2) directing that judgment be entered denying the Petition; and (3) dismissing the action with prejudice.

Dated: June 7, 2016

_____

HONORABLE KENLY KIYA KATO
United States Magistrate Judge